# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LETA WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-272-RAW-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Leta Wright requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 5, 1964, and was forty-two years old at the time of the administrative hearing. She has a tenth grade education and previously worked as a bakery clerk, stock clerk, fast food worker, and computer operator. The claimant alleges she has been unable to work since September 17, 2002, because of injury to her back, left ankle, left foot, lupus, and anxiety.

## Procedural History

On June 27, 2000, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, which application was denied. ALJ Gene Kelly conducted an administrative hearing and determined on December 27, 2006, that the claimant was not disabled. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to lift and/or carry thirty pounds; to occasionally climb ramps and stairs but no climbing of ropes, ladders, and scaffolds; and to occasionally stoop, bend and twist. The claimant was further limited to only simple, repetitive and routine work with "a slight limitation in contact with the public, coworkers and

supervisors." (Tr. 19). The ALJ concluded that although the claimant could not return to her past relevant work, she was not disabled because there was work she could perform existing in significant numbers in the regional and national economies, *e. g.*, mail clerk, laundry sorter, labeler, and bonder (Tr. 23).

## Review

The claimant contends that the ALJ erred: (i) by failing to find that she met a Listing; (ii) by failing to properly weigh the opinions of her treating physicians; and (iii) by finding the claimant could perform sedentary work and applying the Medical-Vocational Guidelines ("grids").[2] The undersigned Magistrate Judge finds the second contention persuasive.

The record reveals that the claimant received treatment from physician's assistant Bill Evans for a short time in December 2001 and January 2002 after she suffered a work-related injury to her back (Tr. 254-56). In September 2005, Dr. Roger Kinney, M.D., completed a letter on the claimant's behalf wherein he summarized her medical care. He described her care in his office by Dr. Evans in January 2002, indicating that the claimant complained of pain which worsened by bending, stopping, lifting, twisting, squatting, or kneeling; weakness caused by prolonged standing; numbness in the left foot and ankle; and numbness, tingling, and burning in the left lower extremity. He also discussed her care by treating orthopedist Dr. David Hicks, M.D., and her surgery in December 2002. He noted that her surgery did

---

[2] The claimant's last contention appears to be made in error. The ALJ found the claimant capable of performing light to medium work (not sedentary as indicated by the claimant) (Tr. 19), and he relied on vocational expert testimony (not the grids) when determining what work the claimant could perform in the regional and national economies (Tr. 23).

not address her discogenic injury at the L4-L5 level as evidenced on her MRI from October 2002. The MRI showed "some evidence of annular tearing[,] a posterior annular fissuring with mild annular bulging at L3-4 and a disc protrusion present at the L4 level." Dr. Kinney determined that "[b]ased upon [his] examination, treatment, observation and communication with [the claimant]," she could not sit, stand, or walk for greater than 30 minutes at any time or sit, stand, or walk for greater than one hour in an entire eight-hour workday. He also found that the claimant could lift and/or carry only zero to five pounds infrequently and could never carry over six to ten pounds. The claimant could not use her upper extremities for any repetitive movement, including grasping, gripping, pushing or pulling (Tr. 266-68). Dr. Kinney completed another letter on the claimant's behalf in October 2006. He noted that *both* he and Mr. Evans treated the claimant for a back injury in December 2001 and January 2002. Dr. Kinney reviewed all of the claimant's medial records and opined that the claimant's "condition in December of 2002 was substantially similar to her condition as enumerated in [his] September 2005 note." He assessed the claimant with the same limitations as he did in September 2005 (Tr. 311-12).

The ALJ discussed Dr. Kinney's opinions (as set forth in his September 2005 and October 2006 letters) and determined they were not entitled to controlling weight because: (i) they were "not supported by Dr. Kinney's records and [were] inconsistent with the rest of the medical records[;]" (ii) they were based solely on Mr. Evans's opinions; and (iii) they were inconsistent with the opinions of Dr. Hicks, the claimant's treating orthopedist (Tr. 22). This analysis of Dr. Kinney's opinions was deficient for several reasons.

First, the ALJ determined Dr. Kinney's opinions were not entitled to controlling weight because they were inconsistent with the rest of the medical record. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (noting that medical opinions from a claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'"), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). However, aside from making a general reference to the opinions of Dr. Hicks, the ALJ failed to specify any of the inconsistencies he found. *See id*. at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300.

Second, even if Dr. Kinney's opinions were not entitled to controlling weight, the ALJ was required to analyze the proper weight to give them. *Id*. at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. In particular, the ALJ was required to discuss the factors set forth in 20 C.F.R. § 404.1527: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant

evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ wholly failed to do this.

Finally, there was no evidentiary support for the ALJ's conclusion that Dr. Kinney's opinions were based solely on the opinions of Mr. Evans. The record suggests that Mr. Evans provided much of the claimant's treatment, but it is vague as to the level of treatment provided by Dr. Kinney. The ALJ should not have rejected Dr. Kinney's opinions on this basis without first recontacting him for an explanation. *See, e. g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2001) ("If the ALJ concluded that Dr. Baca failed to provide sufficient support for his conclusions about the claimant's . . . limitations, the severity of those limitations, the effect of those limitations on her ability to work, . . . he should have contacted Dr. Baca for clarification of his opinion before rejecting it."). *See also McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("[T]he ALJ's unfounded doubt that Dr. Luc agreed with the assessment he signed, in the face of unrefuted evidence to the contrary, was error. At the least, if the ALJ believed that the matter was open to question, he had an obligation under the applicable regulations to obtain additional information from Dr. Luc before rejecting the report outright.").

The ALJ also failed to properly consider the opinions of Mr. Evans. The ALJ considered the findings from Mr. Evans, but he noted that "Mr. Evans [was] not a doctor, but

a physician's assistant, and his opinions [did] not carry as much weight as a treating physician" and his findings "[were not] consistent with his opinions." (Tr. 22). Although Mr. Evans was a physician's assistant, *i. e.*, an "other source," and his opinions were therefore not entitled to controlling weight, *see, e. g., Bowman v. Astrue*, 511 F.3d 1270, 1275 n.2 (10th Cir. 2008) (noting the value in distinguishing between "acceptable medical sources" and "other sources" is that "'[i]nformation from . . . other [medical] sources cannot establish the existence of a medically determinable impairment [and] only acceptable medical sources can give . . . medical opinions' and 'be considered treating sources . . . whose medical opinions may be entitled to controlling weight.'"), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329932, at *2, the ALJ still should have determined what weight he assigned Mr. Evans's opinions by using the familiar factors of 20 C.F.R. § 404.1527 and pursuant to Social Security Ruling 06-03p, at *3-4. *See, e. g.*, *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "'on key issues such as impairment severity and functional effects'" and by considering the 20 C.F.R. § 404.1527 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, at *3-4. He wholly failed to do this.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the opinions from Dr. Kinney and Mr. Evans. If the ALJ subsequently determines that additional limitations should be included in the claimant's RFC, he should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Any objections to this Report and Recommendation must be filed within ten days.

**DATED** this 13th day of February, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**